1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MERRICK JOSE MOORE,                          No.  2:11-cv-3273 AC

12              Plaintiff,

13        v.                                       ORDER

14   W. BENNETT, ET AL.,

15              Defendants.

16

17         Plaintiff Merrick Jose Moore, a state prisoner proceeding pro se, seeks relief pursuant to

18   42 U.S. § 1983.  All parties have consented to have the undersigned Magistrate Judge conduct all

19   proceedings and enter judgment, pursuant to 28 U.S.C. § 636(c).  See ECF Nos. 18 & 38.

20   Pending before the court is defendants' November 1, 2013 motion for summary judgment, which

21   has been fully briefed.  See ECF Nos. 86, 88 and 90.[1]

22         Also before the court are: (1) Plaintiff's motion, ECF No. 85, for "sanctions;"[2]

23   (2) defendants' motion, ECF No. 91, to strike Plaintiff's reply relating to the motion for

24   sanctions; (3) defendants' motion, ECF No. 94, to strike Plaintiff's sur-reply to the summary

25   judgment motion; and (4) defendants' motion, ECF No. 96, to strike Plaintiff's opposition to the

26

27   _____

     [1] Plaintiff also filed a sur-reply.  See ECF No. 93.
28   [2] This is actually a motion to compel.  No sanctions are sought.

                                          1

1   motion to strike the sur-reply.

2                                    BACKGROUND

3          Plaintiff proceeds against four defendants.[3]  The following claims appear from Plaintiff's

4   well-pleaded verified Amended Complaint: (1) an Eighth Amendment excessive force claim

5   against L. Gonzalez, who (according to the complaint), in an unprovoked assault on March 17,

6   2010, dragged Plaintiff, shackled, to a urinal at the back of a bus, slammed him against a steel

7   structure inside the bus urinal, and choked him to near unconsciousness;[4] (2) an Eighth

8   Amendment excessive force claim against defendant Bennett, defendant L. Gonzalez's direct

9   supervisor, who witnessed the assault and did nothing to protect Plaintiff; (3) a First Amendment

10  retaliation claim against L. Gonzalez and Bennett, both of whom threatened and intimidated

11  Plaintiff in retaliation for his insistence on filing a grievance against L. Gonzalez;[5] (4) a First

12  Amendment retaliation claim against defendant Pomilia, who, on March 19, 2010, would not

13  permit Plaintiff to retrieve his property for the bus ride back to SVSP, allegedly in retaliation for

14  Plaintiff's filing a grievance against L. Gonzalez; (5) a First Amendment retaliation claim against

15  defendant Fragoso, Pomilia's direct supervisor, who did nothing after Plaintiff complained to him

16  of Pomilia's conduct; and (6) a First Amendment retaliation claim against defendant

17  _____
    [3] Plaintiff's original claim against L. Gonzalez survived the initial screening of the complaint,
18  although the original claim against Bennett was dismissed.  See ECF No. 4 (Order by Fogel, J.,
    N.D. Cal.).  Upon screening of the First Amended Complaint ("Amended Complaint") (ECF No.
19  6), this court found that Plaintiff could proceed with claims against L. Gonzalez and Bennett, as
    well as new defendants Fragoso and Pomilia.  See ECF No. 16 (Order by Hollows, M.J.).
20  [4] The steel structure is variously referred to as a steel gate, the steel or plexiglass foundation of
    the urinal and the steel structure of the bus itself.  For simplicity, the court refers to it as the "steel
21  structure."  The exact identification of the structure, and what it is made out of, is not material.
    [5] L. Gonzalez and Bennett do not argue for summary judgment on the merits of this claim, nor do
22  they seek qualified immunity against the claim.
    The retaliation claim againt L. Gonzalez and Bennett is well-pled in the Amended Complaint.
23  See, e.g. Amended Complaint ¶¶ 15 (Bennett and L. Gonzalez repeatedly told Plaintiff "you
    fucked up," after Plaintiff insisted on filing a grievance).  Defendants acknowledged the
24  allegations and denied the facts underlying the claim in their Answer.  See Answer  (ECF No.
    40)¶ 4 (denying that "after the transportation bus left SQ, Bennett and Gonzalez told Plaintiff,
25  'You fucked up' in an effort to harass and intimidate Plaintiff for reporting Gonzalez's alleged
    use of excessive force").  Also, this court made express reference to the claim in a prior order.
26  See Order of July 22, 2013 (ECF No. 71) ("On the subsequent bus ride from San Quentin to
27  CSPS, Bennett and Gonzalez told plaintiff he had 'fucked up,'" and Bennett told Plaintiff,
    "'You['re] going to regret it'").
28

                                             2

1  "K. Gonzalez," who confiscated Plaintiff's legal documents, allegedly in retaliation for Plaintiff's

2  filing the grievance against L. Gonzalez.[6]

3                        MOTION FOR SUMMARY JUDGMENT

4        Defendants L. Gonzalez, Bennett, Pomilia and Fragoso move for summary judgment,

5  contending that: (1) defendant L. Gonzalez's unprovoked March 17, 2010 assault against Plaintiff

6  – dragging the shackled prisoner down the aisle of a bus by his clothing to the urinal, slamming

7  him against the steel structure, choking him to near-unconsciousness, dragging him back to his

8  seat, and slamming him into it – was a "de minimis" use of force, and caused Plaintiff no harm;[7]

9  (2) defendant Bennett, who witnessed the entire attack and did nothing to stop it, did not

10 disregard an excessive risk to Plaintiff's safety; (3) defendants Fragoso and Pomilia took no

11 adverse action against Plaintiff on March 19, 2010; and (4) these defendants are entitled to

12 qualified immunity.

13      I.      Legal Standard for Rule 56 (Summary Judgment) Motions

14
15        Summary judgment is appropriate when the moving party "shows that there is no genuine

16 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

17 Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

   proving the absence of a genuine issue of material fact."  Nursing Home Pension Fund, Local 144

18 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

19 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish

20 this by "citing to particular parts of materials in the record, including depositions, documents,

21 electronically stored information, affidavits or declarations, stipulations (including those made for

22
23
   _____

24 [6] It appears that this defendant's name is actually "R. Gonzales."  See ECF No. 39 (waiver of
   service of summons).  He has not moved for summary judgment.  For the sake of consistency
25 with the complaint and the discovery materials, the court continues to refer to him as K. Gonzalez
   in this motion.

26 [7] According to defendants, "Solely for purposes of this motion, Moore's version of events
   regarding the March 17, 2010 incident is undisputed."  Defendants' Memorandum of Points and
27 Authorities in Support of Motion for Summary Judgment ("SJ Motion") (ECF No. 86-3) at 3 n.1.
   Accordingly, this decision refers to Plaintiff's version of the facts as true, rather than alleged, but
28 these facts are assumed true for purposes of this motion only.

1   purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

2   that such materials "do not establish the absence or presence of a genuine dispute, or that the

3   adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ.

4   P. 56(c)(1)(A), (B).

5       When the non-moving party bears the burden of proof at trial, "the moving party need

6   only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

7   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

8   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

9   against a party who fails to make a showing sufficient to establish the existence of an element

10   essential to that party's case, and on which that party will bear the burden of proof at trial.  See

11   Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

12   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

13   circumstance, summary judgment should be granted, "so long as whatever is before the district

14   court demonstrates that the standard for entry of summary judgment ... is satisfied."  Id. at 323.

15       If the moving party meets its initial responsibility, the burden then shifts to the opposing

16   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

17   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

18   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

19   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

20   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

21   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  Moreover, "[a] Plaintiff's verified complaint

22   may be considered as an affidavit in opposition to summary judgment if it is based on personal

23   knowledge and sets forth specific facts admissible in evidence."  Lopez v. Smith, 203 F.3d 1122,

24   1132 n.14 (9th Cir. 2000) (en banc).[8]

25       The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

26   might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

27

28   _____
    [8] Plaintiff filed a verified First Amended Complaint in this case.  See ECF No. 6 at 13.

4

1  Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809

2  F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

3  reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers,

4  Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

5        In the endeavor to establish the existence of a factual dispute, the opposing party need not

6  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

7  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

8  trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

9  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

10  Matsushita, 475 U .S. at 587 (citations omitted).

11       In evaluating the evidence to determine whether there is a genuine issue of fact," the court

12  draws "all reasonable inferences supported by the evidence in favor of the non-moving party."

13  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).

14  It is the opposing party's obligation to produce a factual predicate from which the inference may

15  be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

16  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

17  party "must do more than simply show that there is some metaphysical doubt as to the material

18  facts. …  Where the record taken as a whole could not lead a rational trier of fact to find for the

19  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

20  omitted).

21       In applying these rules, district courts must "construe liberally motion papers and

22  pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

23  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly

24  support an assertion of fact or fails to properly address another party's assertion of fact, as

25  required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion

26  …." Fed. R. Civ. P. 56(e)(2).

27       On December 11, 2012, Plaintiff was provided notice of the requirements for opposing a

28  motion pursuant to Rule 56, as required by Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998)

1   (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th

2   Cir. 1988), and Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).  See Defendants' Rand Warning to

3   Plaintiff Regarding Opposing Summary Judgment (ECF No. 86-2).

4          II.        Plaintiff's Excessive Force Claim Against L. Gonzalez

5               On March 17, 2010, Plaintiff was being transported by bus from the Salinas Valley State

6   Prison ("SVSP"), a facility of the California Department of Corrections and Rehabilitation

7   ("CDCR"), to CDCR's California State Prison-Sacramento ("CSPS").  When the bus made a stop

8   at San Quentin State Prison, Plaintiff started talking to another inmate on the bus.  In response,

9   defendant L. Gonzalez, after telling Plaintiff to stop talking, violently assaulted and battered

10  Plaintiff.

11         A.        Legal Principles Governing Eighth Amendment Excessive Force Claim

12              The unnecessary and wanton infliction of pain on prisoners violates the Eighth

13  Amendment.  Ingraham v. Wright, 430 U.S. 651, 670 (1977).  When prison officials are faced

14  with an immediate disciplinary need or other emergency, they violate the Eighth Amendment

15  when they use force in excess of that needed to maintain or restore discipline, and apply it

16  "maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992);

17  Whitley, 475 U.S. at 320–21.  Force used in a non-emergency situation violates the Eighth

18  Amendment if it is used with deliberate indifference to inmate safety.  Jeffers v. Gomez, 267 F.3d

19  895, 913 (9th Cir. 2001) (per curiam).  A prison official is deliberately indifferent to a substantial

20  risk of serious harm to inmates if that official is subjectively aware of the risk and does nothing to

    prevent the resulting harm.  Id. (citing Farmer v. Brennan, 511 U.S. 825, 828–29 (1994)).

21              "[W]henever prison officials stand accused of using excessive physical force in violation

22  of the [Eighth Amendment] …, the core judicial inquiry is … whether force was applied in a

23  good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

24  Hudson, 503 U.S. at 6–7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).  When determining

25  whether the force was excessive, we look to the "extent of the injury ..., the need for application

26  of force, the relationship between that need and the amount of force used, the threat 'reasonably

27  perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful

28  response.'"  Hudson, 503 U.S. at 7.

1    While de minimis uses of physical force generally do not implicate the Eighth

2  Amendment, significant injury need not be evident in the context of an excessive force claim,

3  because "[w]hen prison officials maliciously and sadistically use force to cause harm,

4  contemporary standards of decency always are violated."  Id. at 9 (citing Whitley, at 327).  An

5  inmate complaining of "a 'push or shove' that causes no discernible injury almost certainly fails

6  to state a valid excessive force claim," but "[a]n inmate who is gratuitously beaten by guards does

7  not lose his ability to pursue an excessive force claim merely because he has the good fortune to

8  escape without serious injury."  Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (per curiam).

9    B.    Undisputed Facts[9]

10    • At all times relevant to this action, Defendant Bennett was employed by the California

11  Department of Corrections and Rehabilitation "CDCR" as a Correctional Sergeant for the

12  transportation unit.  Defendants' Separate Statement of Undisputed Facts in Support of

13  Defendants' Motion for Summary Judgment ("Facts") (ECF No. 86-4) ¶ 1.

14    • At all times relevant to this action, Defendant L. Gonzalez was employed by CDCR as a

15  Correctional Officer for the transportation unit.  Facts ¶ 2.

16    • At all times relevant to this action, Defendant Pomilia was employed by CDCR as a

17  Correctional Officer at California State Prison, Sacramento "CSP-Sacramento".  Facts ¶ 3.

18    • At all times relevant to this action, Defendant Fragoso was employed by CDCR as a

19  Correctional Sergeant at Salinas Valley State Prison "SVSP".  Facts ¶ 4.

20    • On March 17, 2010, Plaintiff was transported, along with other inmates, on a bus from

21  SVSP to CSP-Sacramento.[10]  Facts ¶ 5; Moore Decl. ¶ 2.

22    • Before the bus left SVSP, defendant Bennett told all the inmates on the bus that there

23  was no talking when the bus was moving.  Plaintiff's Facts ¶ 1; Declaration of M. Moore in

24

25  [9]  Plaintiff either agrees that these facts are "undisputed," or has failed to dispute them.  See
     Plaintiff's Statement of Undisputed Facts "Plaintiff's Facts" (ECF No. 88 at 5-10).  The facts are
26  supported by defendants' submitted evidence.  See Exhibits A-H of Defendants' Evidence in
     Support of Motion for Summary Judgment (ECF Nos. 86-5 to 86-8).

27  [10] Defendants accept Plaintiff's version of the events of March 17, 2010, "solely for purposes of
     this motion."  Facts at 1 n.1.  However, defendants assert that at trial, their evidence will show a
28  very different version of these events.  Id.

7

Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Moore Decl.") Decl. ¶ 3.[11]

• During the March 17, 2010 trip, the bus stopped at California State Prison, San Quentin "San Quentin" to drop off other inmates.  Facts ¶ 6.

• Whenever a transportation bus stops at an institution, inmates are unloaded from the bus and/or new inmates are loaded onto the bus.  Facts ¶ 9.

• It is essential that the transportation officers be able to communicate with each other and the inmates on the bus while transferring inmates on and off the bus.  Facts ¶ 10.

• During the stop at San Quentin, Plaintiff talked with another inmate on the bus.  Facts ¶ 7.

• When Plaintiff began speaking with another inmate, after the transportation bus stopped at San Quentin on March 17, 2010, Defendant L. Gonzalez shouted at Plaintiff to "shut the fuck up."  Plaintiff's Facts ¶ 6; Moore Deposition at 14.[12]

• When Plaintiff said he thought the inmates could talk when the bus was stopped, Officer L. Gonzalez violently "snatched" Plaintiff out of his seat by his shoulder and jumpsuit, dragged Plaintiff to the back of the bus in the urinal area, slammed Plaintiff up against the steel structure, and choked Plaintiff with both hands, while stating "You don't open your fucking mouth." Plaintiff's Facts ¶ 7; Moore Deposition at 14; Defendants' Reply to Plaintiff's Response to Separate Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment and Motion To Strike Plaintiff's Objections ("Defendants' Reply Facts") (ECF No. 90-1) ¶ 14.[13]

_____

[11] The wording of this undisputed fact comes from Plaintiff's declaration submitted in opposition to the summary judgment motion.  Plaintiff's wording, as stated in his statement of undisputed facts, draws a conclusion from this fact, namely, that CDCR practice is to allow prisoners to talk when the bus was stopped.  Defendants dispute that conclusion.
[12] Although defendants have asserted that "Moore's version of events regarding the March 17, 2010 incident is undisputed" for purposes of this motion, defendants have offered a much gentler version of L. Gonzalez's initial act.  According to the defendants, "Defendant L. Gonzalez followed CDCR practice by instructing Plaintiff to stop talking."  Facts ¶ 13.
[13] The paragraph numbers in Defendants' Reply Facts refer to the corresponding paragraph of "Defendants' Objections" in that document.

1    • As his choking of Plaintiff came to an end, Officer L. Gonzalez stated "Don[']t you ever

2    question my orders," and " I'll break your dam[n] neck if you ever disrespect me again."

3    Plaintiff's Facts ¶ 8; Amended Complaint ¶¶ 11 & 12; Moore Decl.¶ 6.  Officer L. Gonzalez then

4    roared, "Take your ass back to your seat and don't say a word."  Plaintiff's Facts ¶ 8; Moore

5    Decl. ¶ 6.

6       • Defendant L. Gonzalez dragged Plaintiff back to his seat and slammed him into the seat.

7    Facts ¶ 15; Moore Deposition Excerpts ("Moore Depo.") (ECF No. 86-7) at 27-29; Moore Decl.

8    ¶ 7.[14]

9       C.    Disputed Facts

10   Defendants assert that under CDCR "practice," prisoners are prohibited from talking on

11   the bus while it is stopped and "transfer activity is being conducted," for safety's sake.  See Facts

12   ¶¶ 8 & 11-13.  This fact is genuinely in dispute.  According to Plaintiff's version of the events of

13   March 17, 2010 – which is not disputed by defendants for purposes of this motion – before the

14   bus left SVSP, defendant Bennett told Plaintiff, along with all the other inmates, that they could

15   not talk to each other "'when the bus is moving.'"  Plaintiff's Facts ¶ 8.  This undisputed

16   statement, made by the supervisor on the bus, plainly raises the inference that CDCR practice is

17   to allow prisoners to talk when the bus is stopped.[15]

18   Defendants further assert that during his interaction with Plaintiff on March 17, 2010,

19   defendant L. Gonzalez "never acted out of anger, malice, or for any improper purpose," and that

20   he "never intended to harm Plaintiff."  Facts ¶¶ 24 & 25.  This assertion is disputed by inferences

21   that arise directly from the sequence of events that defendants do not dispute.  It is undisputed

22   that L. Gonzalez made an unprovoked attack on Plaintiff after Plaintiff starting talking with

23   _____

24   [14] Plaintiff says that this fact is "disputed."  Plaintiff's Facts ¶ 8.  However, it is drawn directly
from Plaintiff's own cited deposition testimony and his own cited declaration, filed in opposition

25   to this motion.  Moreover, Plaintiff offers no evidence to put this fact in dispute.  The undisputed
evidence shows that L. Gonzalez dragged Plaintiff back to his seat and slammed him into it while

26   threatening to break Plaintiff's neck and profanely ordering him to get into the seat.

27   [15] Defendants assert that the medical evaluation of Plaintiff showed his only injury to be
"subjective throat pain."  Plaintiffs disputes this fact, asserting that he suffered additional injuries.
The asserted fact does not appear to be material, since a medical evaluation done a few hours later

28   shows those additional injuries.

9

another inmate.  The attack included dragging Plaintiff down the floor of the bus to the urinal, body-slamming him, threatening to break Plaintiff's neck, and choking Plaintiff to the point of near unconsciousness.  Any reasonable fact-finder could infer from the conduct itself that L. Gonzalez acted out of anger, malice or some other improper purpose, and that the conduct was intended to harm Plaintiff.  Indeed, a reasonable fact-finder could find that the conduct was cruel and sadistic and served no legitimate law enforcement purpose.[16]

D.    Discussion

Defendants' decision to accept Plaintiff's versions of the events of March 10, 2010 leaves the court with the task of deciding only whether that version of events compels summary judgment for defendants.  It does not.

According to Plaintiff's version of events, he, along with all the other prisoners on the bus, were told by the supervisor on the bus, defendant Bennett, that they could not talk while the bus was moving.  When the bus came to a stop, Plaintiff began talking with another inmate.  Notwithstanding Bennett's implicitly giving Plaintiff permission to talk at that time, defendant L. Gonzalez, told Plaintiff to stop talking.  When Plaintiff questioned L. Gonzalez about this, L. Gonzalez grabbed Plaintiff by his clothes, "snatched" him up out of his seat and dragged him to the urinal at the back of the bus.  At the urinal, L. Gonzalez, now threatening to break Plaintiff's neck, slammed Plaintiff against the steel structure, and began choking him.  When Plaintiff tried to ask why this was happening, L. Gonzalez, while continuing to threaten Plaintiff, choked him to the point of near unconsciousness.  When this was over, L. Gonzales dragged Plaintiff back to his seat and, while continuing to scream threats and orders at Plaintiff, slammed Plaintiff back into his seat.  At no point after Plaintiff asked for a clarification of the rules do defendants assert or even suggest that Plaintiff resisted, fought, or further broke the "no talking" rule by continuing his conversation with any other prisoner.

---

[16] In addition, Plaintiff testified that after the attack, the supervisor on the bus, L. Bennett, tried to dissuade Plaintiff from filing a grievance by threatening him ("I was going to have problems, my property would come up missing"), by trying to bribe Plaintiff by offering him "anything he wanted" from the supervisor's "R & R," and by trying to explain away L. Gonzalez's behavior ("his officer [L. Gonzalez] was a rookie, you know").  See Moore Deposition Testimony (May 28, 2012) at 37-39.

Defendants ask for summary judgment on grounds that L. Gonzalez's use of force against Plaintiff was "de minimis." SJ Motion at 6. Defendants offer three lines of argument in support of their "de minimis" use of force argument. The court rejects them all.

> 1. <u>Dragging the shackled prisoner, slamming him against a steel structure and choking him to the point of near unconsciousness – all with no provocation – is not a "de minimis" use of force</u>

Defendants, accepting Plaintiff's version of events for present purposes, assert that the force used by defendant L. Gonzalez was "de minimis." The court rejects this assertion. An unprovoked attack against a cooperative prisoner, which included dragging the prisoner down the aisle of a bus, slamming him against a steel structure, and choking him to the point of near unconsciousness, all the while threatening to break his neck, is not a "de minimis" use of force. <u>See</u> <u>Wilkins</u>, 559 U.S. at 38 (reversing the dismissal of an excessive force claim where the prisoner was "choked" and "body slammed" but sustained only minor injuries).[17]

To the contrary, the force used in the attack in this case is "'of a sort repugnant to the conscience of mankind.'" <u>See</u> <u>Hudson</u>, U.S. at 10 (quoting <u>Whitley</u>, 475 U.S. at 327). In contrast, a "de minimis" use of force refers to situations similar to those where an inmate suffers "a 'push or shove' that causes no discernible injury." <u>Wilkins</u>, 559 U.S. at 38 (quoting <u>Hudson</u>, 503 U.S. at 9). The undisputed use of force here bears no relation to a "push or shove." Defendants' use of force is particularly repugnant in this case, where defendants have not offered any reason for the use of this level of force. Defendants assert only that talking on the bus is prohibited by CDCR practice, and that the prohibition is needed for safety reasons while prisoners are being loaded on or off the bus. <u>See</u> Facts ¶ 12. Even assuming this disputed fact is true, however, it provides no justification for the force applied here.

First, defendants do not assert that any prisoners were being loaded on or off the bus at the time Plaintiff was talking. Moreover, defendants do not assert that Plaintiff failed to stop talking when "instructed" to do so by L. Gonzalez. There is no assertion – and no evidence to support

---

[17] Although it is difficult to image a circumstance where such use of force would be "de minimis," there is no asserted fact here – not even a disputed fact – that might even arguably bear on this level of force, such as whether there was a riot going on at the time, or whether the prisoner was armed, or whether the guard reasonably feared for his life.

1   any assertion – that Plaintiff was still talking to another inmate after L. Gonzalez had dragged

2   Plaintiff into the urinal.  There is no assertion, and no evidence, that Plaintiff was violating the

3   "no talking" rule while L. Gonzalez, screaming obscenities and threats, was body slamming

4   Plaintiff against the steel structure.  There is no assertion, and no evidence, that Plaintiff was in

5   violation of the CDCR "no talking" rule while he was being choked into near unconsciousness by

6   L. Gonzalez.  There is no assertion, and no evidence, that Plaintiff was talking to another inmate

7   on the bus when he was dragged back to his seat.  And, there is no assertion, and no evidence,

8   that Plaintiff was breaking any rules when L. Gonzalez body slammed Plaintiff back into his seat.

9        Second, even if Plaintiff somehow continued his conversation with another inmate while

10  all this was happening to him, defendants do not explain how dragging him by his clothes into the

11  urinal was an appropriate use of force in response to Plaintiff's talking on the bus.  They do not

12  explain why body slamming Plaintiff was appropriate to the infraction, nor why choking him to

13  near unconsciousness was an appropriate response his talking on the bus.

14        Defendants cite no cases that would support such assertions.  To the contrary, they have

15  cited only cases having no bearing on this motion.  Defendants first cite <u>Louis v. Marshall</u>, 2010

16  U.S. Dist. LEXIS 138777 at *4 (Mumm, M.J.),[18] <u>adopted</u>, 2010 WL 2180505, 2010 U.S. Dist.

17  LEXIS 138003 (C.D. Cal. 2010), in which, during the process of handcuffing an uncooperative

18  prisoner, a guard "'slammed' Plaintiff's face into a wall."  In <u>Louis</u>, the undisputed facts, as

19  recounted by the Magistrate Judge, showed that Plaintiff had already disobeyed the guard's prior

20  orders, and was physically uncooperative while being handcuffed.  <u>Id.</u>  In fact, during

21  handcuffing, Plaintiff managed to get a hand free and used it to punch the guard.  <u>Id.</u>  Regardless

22  of whether the guard was entitled to summary judgment on those facts, the case has no bearing on

23  this case, where Plaintiff was not uncooperative, did not resist, where the attack was unprovoked,

24  included dragging the Plaintiff and choking him, and where defendants offer no explanation for

25  how the conduct related to, or was intended to stop, Plaintiff's talking on the bus.

26  ////

27

28  [18] No WestLaw citation is available.

Defendants further cite cases in which courts found that: (1) a single blow to the back of the prisoner's head while he was handcuffed during a transport, requiring only treatment by a non-prescription medication, did not constitute excessive force;[19] (2) striking plaintiff in the back of the neck and kicking his ankle during the course of a search of the plaintiff is a mere de minimis use of force;[20] (3) a complaint that the "jail cook pushed him [plaintiff] in the back," because plaintiff was not moving fast enough, "which in turn caused him [plaintiff] to fall into some boxes," does not amount to a violation of the Eighth Amendment;[21] and (4) allegations of bumping, grabbing, elbowing, and pushing plaintiff do not approach an Eighth Amendment claim.[22] None of these cases approaches the level of violence visited upon this Plaintiff in this case.[23]

2.      Extent of Plaintiff's injuries

Defendants assert that Plaintiff suffered only "subjective throat pain and a reddened area on his chest." SJ Motion at 6. Defendants do not explain the relevance of this assertion. Only two possible arguments come to mind.

a.      Plaintiff's injuries do not undermine the claim of excessive force as an evidentiary matter

Defendants may mean to argue that the "de minimis" nature of the injuries undermines the claim that the force used to produce those injuries was excessive, as an evidentiary matter. This would be a proper argument, since "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" Hudson, 503 U.S. at 7 (quoting

---

[19] See Olson v. Coleman, 804 F. Supp. 148, 150 (D. Kan. 1992)
[20] See Jackson v. Hurley, 1993 WL 515688, 1993 U.S. Dist. LEXIS 16954 (N.D. Cal. 1993).
[21] See Turner v. Contra Costa County, 1997 WL 765951, 1997 U.S. Dist. LEXIS 21512 (N.D. Cal. 1997).
[22] See Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997).
[23] See Bradley v. Villa, 2014 WL 1577237, 2014 U.S. Dist. LEXIS 54245 (Austin, M.J.), adopted, 2014 WL 2504745, 2014 U.S. Dist. LEXIS 73492 (E.D. Cal. 2014) (distinguishing the same set of cases, offered for the same point).

13

1    Whitley, 475 U.S. at 321).  Moreover, "[t]he extent of injury may also provide some indication of

2    the amount of force applied."  Wilkins, 559 U.S. at 37.

3          In this case, however, Plaintiff's reported injuries tend to support, rather than undermine,

4    his claim that excessive force was used.  Plaintiff's claim of a "sore throat" tends to support his

5    claim that he was choked.  The claim that he had a "reddened area on his chest" supports his

6    claim that he was dragged along the floor of the bus, body slammed against the metal grate and

7    body slammed back into his chair.

8                          b.     De minimis injuries do not preclude an Eighth Amendment claim as
                                  a matter of law
9

10         Defendants may mean to argue that the extent of injury is minor or "de minimis," and

11   therefore no Eighth Amendment claim can be asserted.  The Supreme Court has expressly

12   rejected this line of argument, however, and accordingly this court rejects it also.  In Wilkins, the

13   lower courts determined that "'in order to state an excessive force claim under the Eighth

14   Amendment, a plaintiff must establish that he received more than a de minimus [sic] injury.'"

15   See  Wilkins, 559 U.S. at 35 (quoting the district court).  The Supreme Court expressly rejected

16   this determination, holding that "[i]n requiring what amounts to a showing of significant injury in

17   order to state an excessive force claim, the Fourth Circuit has strayed from the clear holding of

18   this Court in Hudson."  Id., at 36.

19                  3.     Conclusion

20         According to the facts that defendants agree are "undisputed" for purposes of this motion,

21   Plaintiff was subjected to excessive force.  Indeed, he was subjected to a sadistic attack serving

22   no penal interest.  Accordingly, this portion of defendants' motion will be denied.

23   III.    Plaintiff's Excessive Force Claim Against Bennett

24         A.     Legal Principles Governing Supervisor's Liability in Excessive Force Cases

25         Plaintiff properly asserts an Eighth Amendment claim against Bennett if he can show that

26   Bennett "acquiesced in the unconstitutional conduct of his subordinates, and was thereby

27   deliberately indifferent to the danger posed" to Plaintiff.  Starr v. Baca, 652 F.3d 1202, 1216 (9th

28   Cir. 2011), cert. denied, 132 S. Ct. 2101 (2012).  Deliberate indifference requires a showing that

                                            14

"the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994); Wood v. Beauclair, 692 F.3d 1041, 1051 (9th Cir. 2012).

B.    Undisputed Facts

• While the entire sequence of events of March 17, 2010 occurred, defendant Bennett stood at the front of the bus and watched Defendant L. Gonzalez use excessive force against Plaintiff.  Facts ¶ 16.

• Once Officer L. Gonzalez pulled Plaintiff back and slammed him back in the seat, Plaintiff advised Sergeant Bennett that L. Gonzalez had assaulted him and that he would like to file a complaint.  Plaintiff's Facts ¶ 10.[24]

• Sergeant Bennett escorted Plaintiff off the bus, and told him, "You don't want these type of problems, filing a complaint will cause your property to come up missing."  Plaintiff's Facts ¶ 13.[25]

C.    Disputed Facts

According to defendants, defendant Bennett did not observe any physical injuries to Plaintiff, Plaintiff did not appear to be in pain on March 17, 2010, and Bennett did not believe there was any excessive risk to Plaintiff's safety on March 17, 2010.  Facts ¶¶ 18 & 19.  These facts are plainly disputed by the undisputed fact that Bennett stood and watched the entire unprovoked attack against Plaintiff unfold.  Such an attack against a prisoner by a state actor is plainly unconstitutional, and it plainly put Plaintiff at excessive risk of injury.  The evidence also shows that Bennett actually drew the inference that Plaintiff was being subjected to a risk of

---

[24] Defendants use softer language to describe this event ("Gonzalez returned Plaintiff to his seat").  However, defendants have agreed to use Plaintiff's version of these events, so that is the version cited here.

[25] Plaintiff's testimony is that defendant Bennett's comments were significantly more extensive than Plaintiff includes in his facts section.  According to Plaintiff, Bennett told Plaintiff that he "didn't want to do this," asked what Plaintiff wanted, that Plaintiff could have anything he wanted out of "R & R," that L. Gonzalez was a rookie, and that if Plaintiff "pursued the matter," he "would regret it."  Moore Deposition (May 28, 2012) at 37-38.

15

excessive harm.  Specifically, he tried to dissuade the prisoner from filing a report about the

attack and suggested he would face retaliatory action if he did so.  While different inferences can

be drawn from Bennett's statement (for example, he just did not want to be bothered with the

paperwork), one of them is that Bennett did not want any record created concerning the

unconstitutional attack by his subordinate that occurred on his watch.

Defendants also assert that after Plaintiff complained to Bennett, Bennett took him for

medical evaluation, implying that Plaintiff was taken directly for medical evaluation.  Facts ¶ 20.

This fact is plainly disputed by the undisputed facts that Bennett did not take Plaintiff directly for

evaluation, but rather, he first tried to dissuade Plaintiff from filing his complaint.

D.      Discussion

Defendants argue that Bennett is entitled to summary judgment because he "was unaware

of an excessive risk to Moore's safety, and he did not disregard an excessive risk to Moore's

safety."  SJ Motion at 8.  Moreover, they argue, after Plaintiff reported the attack to him, Bennett

took Plaintiff to be medically evaluated.  Id.

The court rejects defendants' arguments, as they are entirely dependent on a version of

events contrary to the facts defendants have agreed would be used for this motion.  Specifically,

defendants rely upon their assertion that "Bennett did not observe any physical injuries to

Plaintiff nor did Plaintiff appear to be in pain," Facts ¶ 18, and that "Bennett did not believe that

there was any excessive risk to Plaintiff's safety," Facts ¶ 19.  However, the undisputed facts, for

purposes of this motion, are that Bennett had a clear view of the attack.  During that attack, L.

Gonzalez dragged Plaintiff to the back of the bus, body slammed him and choked him to the point

of near unconsciousness.  All this was done in plain view of Bennett by his subordinate L.

Gonzalez, who all the while was threatening to break Plaintiff's neck.  It is difficult to avoid

drawing the inference from these facts that Bennett therefore was aware of an excessive risk to

Plaintiff and did nothing about it.

Other undisputed facts further support this inference.  Instead of stopping the attack, and

instead of taking Plaintiff directly for medical assistance, Bennett first tried to talk Plaintiff out of

filing a report, and then threatened him with the loss of his property and other unspecified

16

1    consequences if he filed the report.  Only after this did not work did Bennett allow medical

2    personnel to evaluate Plaintiff.

3        Of course, at trial, Bennett can explain how this conduct does not amount to deliberate

4    indifference to Plaintiff's plight.  However, on summary judgment, the court must draw the

5    inferences that favor Plaintiff, not those that favor defendants.  This portion of defendants'

6    motion therefore will be denied.

7        IV.    Plaintiff's First Amendment Retaliation Claims

8            A.  Legal Principles Governing a First Amendment Retaliation Claim

9        "Prisoners have a First Amendment right to file grievances against prison officials and to

10   be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012)

11   (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  A viable retaliation claim in the

12   prison context has five elements: "(1) An assertion that a state actor took some adverse action

13   against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

14   chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

15   advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th

16   Cir. 2005).

17           B.    Undisputed Facts

18       • Sergeant Bennett escorted Plaintiff off the bus at San Quentin, and told him, "You don't

19   want these type of problems, filing a complaint will cause your property to come up missing,"

20   and that Bennett "would have to write you up."  Plaintiff's Facts ¶ 13; Amended Complaint

21   ¶ 14.[26]

22       • After Plaintiff was medically evaluated at San Quentin, he was returned to the

23

---

24   [26] Plaintiff's deposition testimony is that defendant Bennett's comments were significantly more
     extensive than Plaintiff includes in his facts section.  According to Plaintiff, Bennett told Plaintiff
25   that he "didn't want to do this," asked what Plaintiff wanted, that Plaintiff could have anything he
     wanted out of "R & R," that L. Gonzalez was a rookie, and that if Plaintiff pursued the matter, he
26   "would regret it."  Moore Deposition (May 28, 2012) at 37-38.

27   Defendants filed an "Objection" to the entirety of Plaintiff's Facts ¶ 13, but do not dispute the
     quoted statement, and offer no evidence to put it in dispute.  In any event, this event occurs on
28   March 17, 2010, and defendants have agreed to accept plaintiff's version of the events of that day.

1  transportation bus and transported to CSP-Sacramento.  Facts ¶ 22. [27]

2        • Throughout the drive to CSP-Sacramento, L. Gonzalez and Bennett repeatedly stated

3  "you fuck'ed up."  Amended Complaint ¶ 15.[28]  Plaintiff interpreted these statements as attempts

4  to intimidate him for his insistence on filing a grievance against L. Gonzalez.

5        • Upon the bus's arrival at CSP-Sacramento, defendants L. Gonzalez, Bennett, Fragoso

6  and Pomilia "engaged in an intense conclave, after which  Plaintiff was summoned by … Bennett

7  and Pomilla [sic] to sign a CDC-1858 form … [relating to Plaintiff's] right to file a complaint

8  against a peace officer, and while doing so, defendant Bennett stated "you [sic] gonna regret it."

9  Amended Complaint ¶ 16.

10       • Plaintiff remained at CSP-Sacramento until March 19, 2010.  Facts ¶ 26.

11       • On March 19, 2010, while still at CSP-Sacramento, upon instructions by prison staff,

12  Plaintiff left his personal belongings in an administrative segregation cell, in preparation for a

13  court appearance.  Amended Complaint ¶ 17.

14       • On March 19, 2010, Plaintiff was advised that the court appearance had been cancelled

15  and that he would be transported back to SVSP.  Amended Complaint ¶ 18.

16       • Plaintiff accordingly asked defendant Pomilia about his personal property, which was

17  still in the cell.  Amended Complaint ¶ 18.

18       • Defendants Pomilia advised Plaintiff that his property had already been delivered and

19  "was in the back of R & R."  Amended Complaint ¶ 18.

20       • Pomilia also stated "You'll get it or I'll send it, I hope."  Amended Complaint ¶ 18.

21       • Plaintiff then told Fragoso that Pomilia was participating in L. Gonzalez's retaliation

22  against Plaintiff, but Fragoso did nothing.  Amended Complaint ¶ 16.

23       • Plaintiff was then returned to SVSP.  Facts ¶ 26.

24

25  [27] The parties skirmish over a pepper-spraying incident that appears to have no relevance to this
    lawsuit.  See Plaintiff's Facts ¶ 13; Defendant's Reply Facts ¶ 20.  Plaintiff is not suing over the
26  pepper-spraying incident.
    [28] Although defendants assert that they accept Plaintiff's version of the events of March 17, 2010,
27  their Statement of Undisputed Facts in fact cherry-picks the facts they choose to include, shades
    them to portray defendants' conduct as gentler than alleged, and omit entirely certain material
28  facts, such as this one.

1    • At SVSP, K. Gonzalez confiscated Plaintiff's legal documents, and refused to return

2    them.  Amended Complaint ¶ 22.

3    • Under CDCR policy and procedure, anytime an inmate is transferred from one

4    institution to another, with the exception of certain medications and "as needed" medical

5    appliances, the inmate is not allowed to have on his person any personal property items on the

6    transportation vehicle.  Facts ¶ 28.

7    • Personal property in most instances has been packaged for transport by custody staff and

8    is transported with the inmate on the vehicle.  Facts ¶ 29.

9    • Transportation staff take possession of the inmate's personal property and it is then

10   loaded on the vehicle.  Facts ¶ 30.

11   • The inmate is not allowed to handle or transport any of his property.  Facts ¶ 31.

12   • Inmates are prohibited from bringing any personal property items with them on the

13   transportation bus in order to ensure the safety and security of staff and inmates — if an inmate

14   were allowed to bring certain personal property items with him on the transportation bus, he

15   could potentially sneak a weapon on the bus and use it to assault staff or other inmates, or to aid

16   in an escape attempt.  Facts ¶ 32.

17        C.    <u>Disputed Material Facts</u>

18       Defendants assert that Fragoso and Pomilia did not handle Plaintiff's property, informed

19   him of the rules regarding the transport of property, and did not act with the intent to retaliate

20   against Plaintiff.  Facts ¶¶ 33-35.  Although Plaintiff properly disputes these facts, they turn out

21   not to be material because, as discussed below, defendants' only challenged conduct does not rise

22   to the level of a constitutional violation.

23        D.    <u>Discussion</u>

24       Plaintiff's retaliation claim is predicated upon his assertion that Fragoso and Pomilia

25   refused "to provide Plaintiff with his personal property on March 19, 2010," Plaintiff Oppo. at 5,

26   so that he could bring it with him on the bus.  <u>See</u> Moore Depo. at 69.  During his deposition,

27   Plaintiff confirmed that the basis for his retaliation claim (apart from the confiscation of his legal

28   material by K. Gonzalez), was that "I never was allowed to go back to the cell and get it [his

1    personal property].  I was not allowed to leave with the property."  See Moore Depo. at 69.

2            However, Plaintiff has also agreed with defendants that it is "undisputed" that "Under

3    CDCR policy and procedure, anytime an inmate is transferred from one institution to another,

4    with the exception of certain medications and 'as needed' medical appliances, the inmate is not

5    allowed to have on his person any personal property items on the transportation vehicle."  Facts

6    ¶ 28; Plaintiff's Facts ¶ 20 ("undisputed").  Accordingly, whatever additional motive defendants

7    might have had for not allowing Plaintiff immediate access to his personal property, they were

8    required to withhold access during transport.  Defendants cannot be found to have violated

9    Plaintiff's First Amendment rights by doing what they are required to do according to the

10   applicable policy and procedure, where there is no assertion that the policy and procedure itself

11   violated the First Amendment.[29]  Defendants Fragoso and Pomilia's motion for summary

12   judgment on the retaliation claim will therefore be granted.[30]

13       V.      Qualified Immunity

14           A.   Standard

15           Defendants seek summary judgment on the additional grounds of qualified immunity.  In

16   resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts,

17   when taken in the light most favorable to Plaintiff, demonstrate that the officers' actions violated a

18   constitutional right, and (2) whether a reasonable officer could have believed that his conduct was

19   lawful, in light of clearly established law and the information the officer possessed.  Anderson v.

20   Creighton, 483 U.S. 635 (1987).  These questions may be addressed in the order that makes the

21   most sense given the circumstances of the case.  Pearson v. Callahan, 555 U.S. 223 (2009).

22   Where the answers to these questions turn on disputed material facts, which must be decided by a

23   jury, qualified immunity is inappropriate.  See Wilkins v. City of Oakland, 350 F.3d 949, 956 (9th

24   Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of

25

26   [29] Plaintiff does not assert that Pomilia's arguably implicit threat to make his property disappear
     ("You'll get it or I'll send it, I hope"), is the adverse action forming the basis for his retaliation
27   claim.
     [30] Accordingly, these defendants' motion for summary judgment based upon qualified immunity
28   will be denied as moot.

                                        20

1  disputed issues of fact in their favor, and against the non-moving party, summary judgment is not

2  appropriate"), cert. denied, 543 U.S. 811 (2004).

3        B.  Analysis – Excessive Force

4        The first question has already been answered.  As indicated above, the court has

5  concluded that the facts, taken in the light most favorable to Plaintiff, establish Section 1983

6  violations by defendants L. Gonzalez and Bennett.  Therefore, the only remaining question for

7  purposes of qualified immunity is whether the right was clearly established at the time of the

8  alleged violation.  See Saucier v. Katz, 533 U.S. 194 (2001).  The court must undertake its

9  evaluation of whether a right was clearly established "in light of the specific context of the case,

10  not as a broad general proposition."  Saucier, 533 U.S. at 201.  In essence, the question is whether

11  the official could have reasonably but erroneously believed that his conduct did not violate the

12  Plaintiff's rights.  Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir.2001) (en banc); see also

13  Anderson v. Creighton, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that

14  a reasonable official would understand that what he is doing violates that right.").

15        The actions complained of occurred on March 17, 2010.  The Supreme Court established

16  long before March 17, 2010, that "the unnecessary and wanton infliction of pain ... constitutes

17  cruel and unusual punishment forbidden by the Eighth Amendment."  Whitley, 475 U.S. at 319

18  (decided in 1986) (internal quotation marks omitted); Hudson, 503 U.S. at 9 (holding, in 1992,

19  that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary

20  standards of decency always are violated");[31] Wilkins, 559 U.S. 37 (holding, on February 22,

21

[31] Hudson also expressly rejected defendants' implicit argument that any level of force used
22  against Plaintiff, however cruel and unusual, is not an Eighth Amendment violation so long as his
    injuries are minor:
23

24            In the excessive force context, society's expectations are different.
              When prison officials maliciously and sadistically use force to
25            cause harm, contemporary standards of decency always are
              violated.  This is true whether or not significant injury is evident.
              Otherwise, the Eighth Amendment would permit any physical
26            punishment, no matter how diabolic or inhuman, inflicting less than
              some arbitrary quantity of injury.  Such a result would have been as
27            unacceptable to the drafters of the Eighth Amendment as it is today.

28  Hudson, 503 U.S. at 9.

1   2010, that "[t]he 'core judicial inquiry … [is] not whether a certain quantum of injury was

2   sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore

3   discipline, or maliciously and sadistically to cause harm.'"); McRorie v. Shimoda, 795 F.2d 780,

4   784 (9th Cir. 1986) ("A prison guard's unjustified striking, beating, or infliction of bodily harm on

5   an inmate violates the Eighth Amendment when it 'evince[s] such wantonness with respect to the

6   unjustified infliction of harm as is tantamount to a knowing willingness that it occur'") (quoting

7   Whitley).

8          The undisputed facts of the events of March 17, 2010 lead to a nearly irresistible inference

9   that L. Gonzalez acted maliciously and sadistically to cause Plaintiff pain, rather than to enforce

10  the "no talking on the bus" rule, and that his supervisor, L. Bennett, watched the entire attack

11  without taking any action to stop it or otherwise to protect Plaintiff.  Any reasonable officers

12  would know, in March 2010, that the law was clear that such conduct violated Plaintiff's Eighth

13  Amendment rights.  Accordingly, defendants' motion for summary judgment on grounds of

14  qualified immunity will be denied.

15                                    OTHER MOTIONS

16  I.      Plaintiff's Motion for Sanctions[32]

17         On September 9, 2013, the court ordered defendants to provide the Internal Affairs Report

18  ("Report") "in the redacted form produced for the court's in camera review" to the Corcoran State

19  Prison litigation coordinator by Monday, October 14, 2013.  ECF No. 83 at 1.  The order permits

20  Plaintiff to view the Report by asking the litigation coordinator, in writing, for a viewing, which

21  the litigation coordinator would then set up.  Id.  On October 1, 2013, Plaintiff timely filed his

22  request, in writing, to see the Report.[33]  Moore Declaration, October 15, 2013 (ECF No. 85) ("2nd

23

24  [32] The motion is mis-named, in that it seeks only to compel production of discovery.  It does not
    seek sanctions.

25  [33] Defendants say that the request was early, apparently because they interpret the request as one

26  to see the Report on October 1, 2013.  Defendants' Opposition to Plaintiff's Motion for Sanctions
    for Failure to Cooperate With Discovery (ECF No. 87) ("Oppo. to Sanctions") at 3.  That is

27  incorrect.  The request was made on October 1, 2013, but does not specify when the viewing
    would occur.  Sensibly interpreted, this is a request to view the Report when it becomes available,

28  on or after October 14, 2013.

1   Moore Decl.") at 3.

2          On October 10 or 11, 2013 – three or four days before the defendants' deadline for

3   producing the Internal Affairs Report – defendants had not yet provided the redacted report to the

4   litigation coordinator.  Nevertheless, for reasons best known to defendants, they escorted plaintiff

5   to the designated viewing location, and he was given a CD to view.[34]  The CD of course, did not

6   contain the Report that was the sole subject of the court's September 30, 2013 Protective Order.

7   By October 15, 2013, the day after the production deadline, defendants still had not provided

8   Plaintiff the opportunity to inspect the redacted Report, despite his timely request for the

9   inspection.  Plaintiff thereupon filed his motion for sanctions that same day, October 15, 2013.

10  Also on October 15, defendants overnighted the Report to the litigation coordinator, Oppo. to

11  Sanctions at 3, who received it on October 16, 2013, two days after this court's deadline.  See

12  Declaration of M. Kimbrell in Support of Defendants' Opposition to Plaintiff's Motion for

13  Sanctions for Failure To Cooperate with Discovery ("Kimbrell Decl.") (ECF No. 87-4) ¶ 2.

14         Defendants offer no explanation for the delay, nor for their taking Plaintiff to view a

15  document before they had provided the document to the litigation coordinator.  They do assert

16  that "[o]n October 23, 2013, inmate Moore was scheduled to view" the Report, but that he

17  "refused to exit his cell to review the report."  Kimbrell Decl. ¶¶ 6-7.  Plaintiff denies that any

18  prison official contacted him or notified him that the Report was available for viewing, or that he

19  refused to exit his cell, on October 23, 2013.  2nd Moore Decl. ¶ 5.  The court cannot resolve this

20  battle of sworn testimonies based upon the paper record, and it would be overkill at this point to

21  bring the affiants in to testify about the matter, or to bring plaintiff to the federal courthouse to

22  inspect the redacted Report.

23         Accordingly, plaintiff's motion will be granted, and defendants will again be ordered to

24  make the redacted Report available for Plaintiff's inspection.

25  ////

26  ////

27

28  _____
    [34] The parties disagree on when this inspection occurred.  However, the exact date of this
    inspection it is not relevant to any matter before this court.

                                                   23

1

    II.      Defendants' Motion To Strike Plaintiff's Reply in Support of the Motion for "Sanctions"

2

3    Defendants move to strike Plaintiff's reply in support of his motion for sanctions, on the

4 grounds that it was filed late.  The reply was filed late, however the court exercises its discretion

5 to waive the lateness of filing given the constraints on the pro se prisoner, and the importance of

6 the reply in this case.  The motion to strike will be denied.

7    III.      Defendants' Motions To Strike Plaintiff's Other Filings

    Defendants move to strike Plaintiff's un-authorized sur-reply regarding defendants'

8

9 summary judgment motion, and to strike Plaintiff's opposition to defendants' motion to strike the

10 sur-reply.  The sur-reply added nothing to Plaintiff's opposition, and played no part in the court's

11 decision.  Accordingly, the motion to dismiss it will be denied as moot, and the motion to strike

12 the opposition to the motion to strike it is therefore also moot.

13

CONCLUSION

14    For the reasons stated above, the court orders as follows:

15    1.      The motion of defendants L. Gonzalez and Bennett (ECF No. 86), for summary

16 judgment on the merits of Plaintiff's Eighth Amendment excessive force claim  is hereby

17 DENIED, and their motion based upon qualified immunity, is hereby DENIED;

18    2.      The motion of defendants Fragoso and Pomilia (ECF No. 86), for summary

19 judgment on the merits of Plaintiff's First Amendment retaliation claim is hereby GRANTED,

20 their motion for summary judgment based upon qualified immunity is hereby DENIED as moot,

21 and defendants Fragoso and Pomilia are hereby DISMISSED from this case with prejudice;

22    3.      Plaintiff's motion for "sanctions" (ECF No. 85), as construed herein as a motion to

23 compel, is GRANTED.  Defendants are hereby ORDERED to make the redacted Report available

24 for plaintiff's inspection, in accordance with the terms of the Protective Order, no later than

25 September 25, 2014 at 1:30 p.m.  Defendants shall file with the court a statement affirming that

26 the inspection has occurred, or if not, the circumstances surrounding any failure to inspect, no

27 later than September 26, 2014 at 4:30 p.m.

28 *////*

4.      Defendants' motion (ECF No. 94), to strike Plaintiff's sur-reply, is hereby DENIED as moot.

5.      Plaintiff's motion (ECF No. 96), to strike defendant's motion to strike the sur-reply, is hereby DENIED as moot.

IT IS SO ORDERED.

DATED: September 11, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE